Guy E. HOUSE, Administrator, etc.,
Appellant,

v.

Marcus A. KELLERMAN, Appellee.

Court of Appeals of Kentucky.

Nov. 8, 1974.

As Modified on Rehearing Feb. 7, 1975.

R. J. Turley, Turley, Tackett, Savage & Moore, Lexington, for appellant.

Landrum, Patterson & Dickey, Lexington, for appellee.

PALMORE, Justice.

On the afternoon of November 13, 1969, an automobile driven by Leslye Hill, in which Janice House was riding as a passenger, went out of control as it proceeded southward on Interstate Highway 75 in Boone County and was struck by a car being driven in the same direction by Marcus Kellerman. Janice, who was in the eighth month of pregnancy, and her unborn child were killed. Guy House, her husband, acting as administrator of their estates and suing also in his own right, brought this action for damages against both drivers and against his insurance company under the uninsured motorist provision applicable to Leslye Hill. He appeals from a judgment entered pursuant to a verdict for the defendant drivers.

The claims against Leslye Hill and the insurance company were settled after rendition of the judgment, and Kellerman is the only appellee.

At the place of the accident I-75 consists of two northbound and two southbound traffic lanes separated by a rather wide median. At the time in question it was raining. Mrs. (Leslye) Hill was going south in the inner or left-hand lane bordering the median. Kellerman was following in the same lane at some distance to the rear. Two trucks were moving southward in the outer or right-hand lane. The first of these two trucks had just entered I-75 from the Corinth interchange and was passed by the Hill vehicle, which then suddenly began to skid, went out of control and into the median, and then came back onto the inner southbound traffic lane and was struck by the Kellerman car.

Mrs. (Janice) House was asleep as the Hill vehicle approached the scene of the collision. When the car began to slide, Mrs. Hill called her name, "Janice!" whereupon Janice awakened instantly and grabbed Mrs. Hill's right arm. According to Mrs. Hill, it was this sudden reflex action by Janice that caused her to lose control of the automobile because, even though it was then skidding, she felt that she could keep it steady on its course.

Briefly, Instructions 1 and 2 outlined the duties of ordinary care on the part of Leslye Hill and Marcus Kellerman, and Instruction 3 submitted the contributory negligence of Janice House. No. 4 was a combination last clear chance and sudden emergency instruction with respect to Kellerman. No. 5 instructed the jury, in substance, to find for the defendants if it believed from the evidence that the accident "was caused and brought about solely by the decedent, Janice House, grabbing the arm of her driver . . . and thereby causing said automobile to go out of control . . ." etc. The theory of this instruction was that even though Janice's action may not have been negligent it could have been found to be an intervening cause superseding the negligence, if any, of the defendants. In finding for the defendants the jury specified that it did so under Instruction 5.

It appears from the record that except for the word "solely," which was inserted following objections by counsel for plaintiffs, Instruction 5 was given at the insis-

tence of Kellerman. In the end, both sides objected to the instruction and in our judgment it was erroneous with or without the word "solely."

To begin with, literally speaking there can never be only one "cause" of any result. Every cause is a collection of many factors, some identifiable and others not, all determined by prior events. The law seeks out only the collective cause or causes for which it lays responsibility on some person or persons. A lawsuit seeks only to find a resting place among the parties for that responsibility. The function of instructions is to ascertain whether it falls on the defendant. If for whatever reason it does not, or if the jury is not convinced one way or the other, the plaintiff loses. An instruction telling the jury that if the accident resulted from a cause for which a party was *not* responsible it shall find for the defendant is needless, because it has been instructed elsewhere that it shall find against him only if it believes from the evidence that the cause was one for which he *was* responsible. And it is prejudicial because it gives undue emphasis to the evidence on which the defendant relies in contending that his fault, if any, was not a legal cause. In this respect there is a direct analogy between the theories of superseding cause and unavoidable accident. See Wooten v. Legate, Ky., 519 S.W.2d 385 (decided today), in which this court has categorically and finally disapproved instructions on the theory of unavoidable accident.

■ Though not made altogether clear in the opinion, a point of significance in Glasgow Realty Co. v. Metcalfe, Ky., 482 S.W.2d 750 (1972), was the rejection of the defendant's contention that it was entitled to an instruction on intervening or superseding cause. Cf. Restatement, Torts

2d, §§ 440–453; Prosser on Torts (4th ed.), §§ 44, 45. As in nearly every case in which the specific question of superseding cause has arisen, it was decided as a matter of law. See cases collected in West's Kentucky Digest, Negligence, ■■■ and Automobiles, ■■■■■■ Nevertheless, as a facet of proximate cause it has been recognized as basically a jury question when the facts were such that reasonable men might differ. Bosshammer v. Lawton, Ky., 237 S.W.2d 520, 523 (1951); Hines v. Westerfield, Ky., 254 S.W.2d 728, 729 (1953); Seelbach v. Cadick, Ky., 405 S.W.2d 745, 750 (1960); Restatement, Torts 2d, § 453.[1] We now hold to the contrary. The question of whether an undisputed act or circumstance was or was not a superseding cause is a legal issue for the court to resolve, and not a factual question for the jury.[2]

Considering the complexity and abstract nature of the various criteria for intervening and superseding causation, exemplified in the Restatement, Torts 2d, §§ 440–453, the disposition of this court to treat the question as a legal rather than a factual issue reflects the inevitable vicissitudes of life. It is enough to tax jurors with the problems of what an "ordinarily prudent person" would have done under similar circumstances, and whether a party's failure to meet that standard was a "substantial factor" in causing the accident, without requiring it to answer such abstruse inquiries as whether the consequences of an intervening force or circumstance "appear after the event to be extraordinary rather than normal," or "highly extraordinary." Cf. Restatement, Torts 2d, §§ 442(b), 447. By its nature, the question must be decided empirically, on a case-by-case basis, and cannot be practically fitted into instructions to juries.

---

1. Brock v. Pillion, Ky., 277 S.W.2d 27, 29 (1955), in which the passenger's grabbing of the steering wheel is characterized as "probably . . . the real cause of the accident. Certainly, it was an intervening cause," does not suggest that an instruction on that theory was or should have been given.

2. As a matter of fact, there is much to be said for the proposition that basic causation itself should be treated as a question of law, the jury deciding only the issues of negligence. However, we do not consider this to be an appropriate case in which to modify the existing practice in that respect.

■ Only when (1) an act which is claimed to have taken place would be a superseding cause as a matter of law, and (2) there is an issue of fact as to whether it happened, should there be an instruction mentioning it, and that instruction should tell the jury in substance that unless it believes from the evidence that it did *not* happen it shall find for the defendant, this form being essential in order to keep the burden of proof on the plaintiff.

If there is no issue as to whether the act or event actually occurred, whether it constituted an independent cause superseding and eliminating the alleged negligence of the defendant as a legal cause should be determined by the court. If it was, the defendant is entitled to a directed verdict. If it was not, or if reasonable minds could differ on the question, the case should be submitted to the jury under the usual instructions, leaving it to the lawyers to argue in their summations to the jury whether the event in question played such a major role as to exclude the defendant's negligence from being a "substantial factor" in causing the accident.

In short, only when an intervening force would constitute a superseding cause as a matter of law should it be singled out as the subject of an instruction, and then only if it is necessary to determine whether in fact it took place.

■ In this case, we are of the opinion that it cannot be held as a matter of law that the reflex action of Janice upon being suddenly awakened to find the car in a skid was extraordinary or unforeseeable and thus a causal factor overriding and eliminating the legal significance of such antecedent causation as may have been represented by Leslye Hill's negligence, if she was in fact negligent. Therefore, the case should have been submitted on the question of Leslye's negligence without reference to Janice's intervening act.

■ With respect to Kellerman, Instruction 5 was erroneous for the additional reason that it negated the effect of No. 4, according to which his duties did not arise unless and until he had an opportunity to observe Janice's peril. No such opportunity could have existed, of course, until after the Hill automobile had begun its erratic movement, which according to all the evidence was after Janice had grabbed Leslye's arm. Whatever causation may have been attributable to Kellerman's failure to perform his duties under Instruction 4 could not possibly have been superseded by an act that took place before those duties arose.

■ Kellerman has a strong argument to the effect that he was entitled to a directed verdict anyway, but we are not so persuaded. Under the evidence with respect to the distance between the two vehicles immediately before the Hill car went out of control (there was evidence, for example, that it moved some 200 feet down the median before coming back onto the highway), and Kellerman's testimony that he saw nothing untoward until it popped back onto the pavement, we think it would not be unreasonable for a jury to believe that if he had been exercising ordinary care he could have avoided the collision.

■ As characterized by Leslye Hill, the action of Janice in grasping her arm upon being suddenly awakened to behold the car skidding down this heavily-traveled arterial highway "was just a reflex." Without evidence to the contrary, we are of the further opinion that a finding of negligence on the part of Janice would not be reasonably justified. Hence there should have been no instruction on contributory negligence, and the propriety of a last clear chance instruction falls with it.

■ Nor should there have been an instruction on sudden emergency. As explained in Harris v. Thompson, Ky., 497 S.W.2d 422, 428 (1973), the occasion for presenting that theory in the instructions does not depend on whether the occurrence in question could reasonably be regarded as in fact a sudden emergency, but whether it alters or modifies the duties that otherwise would have been obligatory on the driver whose conduct is under judgment. "The

proper criterion is whether any of the specific duties set forth in the instruction would be subject to exception by reason of the claimed emergency." *Ibid.* To illustrate, if the unexpected approach or presence of some object, person or condition in or near the driver's intended path of travel caused him to turn into the wrong lane, into a lane occupied by another vehicle, or off the pavement, or to make some other unorthodox move which may appear afterward not to have been the best or a wise choice, an exculpatory qualification in the form of the sudden emergency theory is appropriate. In this case such a qualification might have been applicable to the duties of Leslye Hill had she taken to the median by choice, but of course she did not go there by her own volition. However, it was inapplicable to the duties of Kellerman for the simple reason that he made no choice. In fact, according to his version of the accident he had no opportunity to make a choice. His defense is adequately embraced by a standard instruction submitting the question of whether under all the attending circumstances (which necessarily included the emergency) he exercised the degree of care an ordinarily prudent person would exercise in the same situation.

Upon another trial it will be necessary that the instructions be revised to eliminate Leslye Hill as a defendant and to submit the issues in accordance with the principles expressed in this opinion. For the convenience of the parties and of the trial court, if the evidence is the same they may be drafted along these lines:

1. It was the duty of Leslye Hill in driving her automobile to exercise ordinary care for the safety of her passenger, Janice House, and for the safety of other persons and vehicles using the highway. This general duty included the following specific duties:

    (a) To have her automobile under reasonable control;

    (b) To drive at a speed no greater than was reasonable and prudent, having regard for the traffic and for the condition and use of the highway.[3]

    (c) To exercise ordinary care with respect to having her automobile in reasonably safe physical condition for driving on the highway;[4] and

    (d) To exercise ordinary care generally to avoid collision with other vehicles on the highway.

Are you satisfied from the evidence that Leslye Hill failed to comply with any one or more of these duties and, if so, that such failure was a substantial factor in causing the accident?

                          (Check one.)

YES–      _____

NO–       _____

                Signature(s)

2. It was the duty of the defendant Kellerman in driving his automobile to exercise ordinary care for the safety of other persons and vehicles using the highway, and this general duty included the following specific duties:

    (a) To keep a lookout for other vehicles in front of him or so near his intended line of travel as to be in danger of collision;

    (b) To have his automobile under reasonable control;

    (c) To drive at a speed no greater than was reasonable and prudent, having regard for the traffic and for the condition and use of the highway;[5] and

    (d) To exercise ordinary care generally to avoid collision with other vehicles on the highway.

---

3. There was no evidence that she was exceeding the speed limit.

4. There was evidence that her tires were slick.

5. There was no evidence that Kellerman was exceeding the speed limit.

Are you satisfied from the evidence that the defendant Kellerman failed to comply with any one or more of these duties and, if so, that such failure was a substantial factor in causing the accident?

·(Check one.)

YES– _____

NO– _____

_____
Signature(s)

3. If, and only if, you have answered "YES" under *both* Instructions 1 and 2, you will now determine from the evidence and state what percentage of the causation was attributable to Leslye Hill's failure to comply with her duties and what percentage of the causation was attributable to the failure of the defendant Kellerman to comply with his duties, as follows: ·

Hill– _____%
Kellerman– _____%
Total– 100 %

4. You will determine from the evidence and fix the damages suffered by the estate of Janice House at such sum as will reasonably compensate for [list elements and limits].

5. [Damages to estate of unborn infant.]

6. [Damages to Guy House.]

7. [Definition of ordinary care.]

8. [Number of jurors required for verdict.]

■ It will be recognized, of course, that although Leslye Hill is now out of the case it still is necessary that her negligence, if any, be determined so that if Kellerman is found liable his share of the damages may be apportioned. Cf. Orr v. Coleman, Ky., 455 S.W.2d 59 (1970).

The judgment is reversed with directions for a new trial on the claims against Kellerman.

All concur.