Armand **PETERSON**, Jr., d/b/a Tri-City Cooling and Heating, Inc., Appellant,

v.

Marshall **BAILEY** and his wife, Carol Faye Bailey, Ed Peterson and his wife, Katherine Peterson, Oscar H. Merideth and Hollis Merideth d/b/a Oscar Merideth & Son, Contractors, Appellees.

Court of Appeals of Kentucky.

Feb. 24, 1978.

Rehearing Denied June 16, 1978.

Discretionary Review Denied Oct. 24, 1978.

 

Uhel O. Barrickman, Clara Whitaker Allen, Richardson, Barrickman & Dickinson, Glasgow, for appellant.

H. Jefferson Herbert, Jr., Wilson, Herbert & Garmon, Glasgow, for appellees.

Before HOWERTON, LESTER and REYNOLDS, JJ.

LESTER, Judge.

This is an appeal from a judgment entered upon an award of a jury of $29,952.45 to appellees for the loss of a house and tools and debris removal. Defendants below moved for judgment notwithstanding the verdict or a new trial which were overruled.

Oscar Merideth & Son were contractors who were engaged to build a residence by Marshall Bailey and Ed Peterson which the latter had a contract to sell to Thomas and Tomie Kiger upon its completion. The Merideth firm had a subcontract with appellant for installation of the central heating and air conditioning.

During the afternoon of August 19, 1975, one Kress Taylor, an employee of appellant, was attempting to solder the interior to exterior precharged refrigeration lines. These pipes were made of copper and covered with an insulation. Taylor was inexperienced in this particular function and in using the acetylene torch, which generated up to 1300° F. temperature in the copper lines, he used too much flame and failed to use any protective shields. Copper readily conducts the intense heat and this in turn burns the insulation along the pipe thus causing a great deal of smoke. Taylor was unsuccessful in his task because of a dense accumulation of smoke and while making a routine inspection, Mr. Pete Peterson, whom we assume is Armand Peterson, owner of appellant, stopped at the construction site and found the pipe insulation (armaflex) smoking and found beads of fire or red hot spots on the celotex wall type insulation panel in the area of the soldering job. Peterson related that the burning of the armaflex was nothing unusual due to the heat and, employing a smaller flame, he completed the connection. Peterson testi-

fied that Taylor was using the wrong technique. Before leaving, the appellant emptied the contents of a fire extinguisher in the area behind the wall where the work was being done and then he and Taylor left.

While the above described operation was being conducted, Bailey, his wife and the prospective purchasers were inspecting the premises and in doing so, they observed the smoke in a utility room, a hallway and the garage but Mr. Bailey did not believe there was fire present because he relied upon Peterson's competence. The Baileys lived across the street from the new house and upon leaving the Kigers, they went to another construction site and then returned home about 5:30 P.M.

About 7:00 P.M., Mrs. Bailey observed smoke coming from the vent pipe and upon telling her husband, Mr. Bailey first attempted to call Peterson and, his telephone being busy, he summoned the fire department. Upon arrival, Lieutenant Johnson of the Glasgow Fire Service found the source of smoke in the utility room under the electrical box near a point where the refrigeration line entered the structure and, removing the paneling from around the box, he found no flames but did observe indication of burning on some double studding. The area was watered down and the fireman proceeded to chop out another portion of paneling to explore for flames but at Bailey's request, he refrained from doing so in order to prevent further damage. Further inspection by chopping, touch and observation satisfied the Lieutenant that there was no flame and after Bailey advised him he would check the house later, the fire company left. Thereupon Bailey notified Merideth and Peterson of what had happened. At 3:00 A.M. on August 20, 1975, the home burned to the ground.

■ The principal thrust of appellant's argument before this court is directed at what is termed the superseding intervening cause of Bailey's request or refusal of permission for the fire department to take out additional paneling on its first trip, the theory being that if that had been done, it would have been "[t]he only proper and sure procedure" to determine if there was no further fire. We disagree because Lt. Johnson testified that in spite of the fact that he did not remove the panel that " . . . but, really, to my satisfaction, I thought the fire was out."

■ Appellant admits its negligence but seeks to limit its liability upon the doctrine of intervening cause by charging an entity not a party to the litigation, namely, the Glasgow Fire Department, with being the intervening negligent actor whose actions or failure to act superseded the negligence of the air conditioning installer. We have examined *Restatement (Second) Torts* § 440 through 447 (1965) and based thereon, we perceive the law to be contrary to appellant's position. This is particularly true when we consider § 442 and § 447(c), the latter being to the effect:

> The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if
>
> .  .  .  .  .
>
> (c) the intervening act is a normal consequence of a situation created by the actor's conduct and the manner in which it is done is not *extraordinarily* negligent (Emphasis Added).

§ 447 was cited in *House v. Kellerman*, Ky., 519 S.W.2d 380.

Quite applicable to this appeal is the commentary found at *Restatement (Second) of Torts* § 435, Comment d (1965) commencing at the first literal paragraph at 453. We invite the attention of the parties thereto.

In his discussion of normal intervening causes, Professor Prosser (W. Prosser, *Torts* § 44 4th Ed. 1971) examines the "rescue doctrine" as applicable to property and makes the following observation:

> The scope of the risk created may still extend to the possibility that such defensive efforts may be negligent, and so may endanger others. It is only when they are *so utterly foolhardy and extra ordi-*

*nary* that they cannot be regarded as any normal part of the original risk, that they will be considered a superseding cause (Emphasis Added).

Nothing that Bailey or the fire department did can be termed negligent, utterly foolhardy or extraordinary. The mere fact that they acted in a manner contrary to the way that appellant thought they should have acted does not relieve or limit Peterson's liability.

Marshall Bailey responded to the peril of his house emitting smoke, and that smoke and its attendant smoldering or fire were caused by appellant's negligence. What appellee did was an effort to avert or mitigate the apparent harm and he should not be taxed for so doing, since we note that 57 Am.Jur.2d *Negligence* § 222 at 601 enunciates the better view:

On the principle that a person charged with negligence may be held liable for anything which, after the wrong was committed or the injury was complete, appears to have been a natural and probable consequence of the act, the act of a third person, although negligently performed, in attempting to remedy the situation caused by the negligence of the original wrongdoer is not ordinarily an efficient intervening cause relieving the latter from liability for the resulting injury to the plaintiff.

Appellant's contention as to the instruction regarding the measure of damages is without merit and requires no further discussion pursuant to *Stewart v. Sizemore*, Ky., 332 S.W.2d 281, 282 (1960).

Through the medium of a reply brief, appellant raises the issue that he was entitled to a "sole cause" instruction dealing with the negligence of the fire department. Based upon the record and what we have said regarding the absence of negligence upon the part of the firemen, we do not consider this last contention to be so persuasive so as to require reversal. Moreover, appellant never raised by any pleading in the record the "sole cause" defense and therefore, an instruction thereon is not available to him, for as was pointed out in

*Allen Co. v. Thoroughbred Motor Court,* Ky., 272 S.W.2d 343, 345 (1954):

It is unnecessary to cite the many cases in which we have consistently held that the instructions must be confined to the issues formed by the pleadings.

The judgment is affirmed.

All concur.