**BOHNERT EQUIPMENT COMPANY, INC., Movant,**

v.

**Ronald KENDALL and Cleveland Crane & Engineering Company, Respondents.**

**CLEVELAND CRANE & ENGINEERING COMPANY, Movant,**

v.

**BOHNERT EQUIPMENT COMPANY, INC. and Ronald Kendall, Respondents.**

Supreme Court of Kentucky.

July 3, 1978.

C. Alex Rose, A. Courtney Guild, Jr., Louisville, for Cleveland Crane & Engineering Co.

Ben T. Cooper, Louisville, for Bohnert Equipment Co., Inc.

J. J. McCarthy, Louisville, for Ronald Kendall.

REED, Justice.

## I

### The Procedural History

The plaintiff, Ronald Kendall, an employee of Reynolds Metal Company, was injured when a crane he was operating snapped free from the ceiling of Reynolds' factory and struck him. He sued Cleveland Crane & Engineering Company, manufacturer of the crane, Bohnert Equipment Company, the seller of the crane to Reynolds, and Rapid Installation Company which installed the crane. Kendall sought recovery on the strict liability theory of Section 402A of the Restatement of Torts 2d against Cleveland and Bohnert and on a negligence theory against Rapid Installation. A jury trial resulted in a verdict in favor of all defendants. Kendall appealed to the Court of Appeals from the portion of the trial court judgment which exonerated Cleveland and Bohnert.

In the Court of Appeals, Kendall asserted that the trial court should have granted him a directed verdict on the issue of liability, but that, in any event, erroneous jury instructions entitled him to a new trial. The Court of Appeals rejected his contention

that he was entitled to a directed verdict on the issue of liability. That court, however, agreed that the jury instructions were prejudicially erroneous and that a new trial as to the liability of Cleveland and Bohnert was required. The opinion of the Court of Appeals set forth instructions which it directed be given to the jury at the new trial. Bohnert and Cleveland separately moved this court for discretionary review, which we granted. We will confine our consideration to the issues for which discretionary review was sought.

## II

## The Facts

In September 1967, Reynolds submitted a purchase order to Bohnert, Cleveland Crane's distributor, for a traveling crane for Reynolds' newly completed factory. Cleveland Crane and Bohnert designed the crane. Cleveland Crane furnished the parts; Bohnert secured the services of Rapid Installation which installed the equipment supplied by Cleveland Crane. Rapid completed installation in June 1968.

The crane travelled on runways and could be moved on these to the north part of the building or south to the loading dock. The operator operated the crane by pressing the appropriate button of the six on the hand-held control pendant which hung from a cable connected to the top of the crane. The design allowed for a five-degree motion in the runways. This entire system hung suspended from the ceiling by hanger rods. The roof of the building slanted so it was necessary that the suspension hanger rods vary in length; the longer hanger rods supported the east side of the crane, and the shorter hanger rods the west wide. The shorter hanger rods underwent greater stress because of excessive sway.

About a year after the crane was installed, Reynolds first experienced breakage of some of the shorter hanger rods. Apparently Reynolds first purchased a replacement hanger rod in May 1969. Additional purchases of replacement rods were made in September 1969, September 1970, and in September 1971. On September 30, 1971, the plaintiff, Kendall, who had been working about 10 days as a crane operator, while attempting to place a 2,070-pound load onto a truck, heard a loud pop and was immediately struck by the falling crane. Kendall's testimony that no one had warned him of the danger caused by the breaking hanger rods was uncontradicted.

According to Cleveland and Bohnert, they became concerned when Reynolds started buying hanger rod replacements. Graeser, President of Bohnert, called Kittel, Reynolds' plant engineer. After talking with Kittel, Graeser called Berge, the representative of Cleveland on this project, who flew to Louisville and with Graeser conferred with Kittel at the Reynolds plant. Graeser and Berge testified that when Kittel showed them the crane it was obvious that the runways in operation were moving in excess of the designed five degrees.

Graeser and Berge said that they discussed the problems with Kittel and explained to him that if hanger rods were breaking the motion in the runway must have been exceeding the designed five degrees. Kittel agreed with them. Graeser and Berge also stated that at this first visit they noticed the operator was "jogging" the crane. "Jogging" is the operation of hitting the forward control button of the crane and then the reverse button which causes the load to swing. We do not attach significance to this element because Cleveland's evidence was that the normal practice to stop the crane entailed pushing the reverse button when the crane was going forward, and this was called "plugging." It would therefore appear that this was a foreseeable use of the crane.

Again, according to Cleveland and Bohnert, Kittel assured Graeser and Berge that he would correct the problem of excessive motion by proper bracing. Berge testified that he described to Kittel the manner in which the runway should be braced and Kittel indicated that he understood Berge's suggestions. Bohnert and Cleveland also produced evidence that one of the broken hanger rods was furnished by Kittel to

Graeser who mailed it to Cleveland for examination. Cleveland wrote Bohnert that its examination again indicated the need for lateral bracing to limit the runway swing.

After sending this letter to Bohnert, Cleveland's man Berge again returned to Louisville, and with Graeser made another trip to Reynolds. On this occasion, Kittel stated to them that he had still not installed the bracing because he had been too busy but that he did intend to do so. Apparently, Graeser made a third visit to Reynolds and discussed the problems with Kittel because Graeser testified that on at least three occasions Kittel was informed of the necessity for sway bracing.

According to Reynolds' evidence, it was given inadequate warning of the danger and its consequences. Reynolds' safety engineer Brinley testified that Reynolds knew the short rods were breaking and replaced them when they broke. He stated that Reynolds made no attempt to find the cause of breakage. He thought the condition was something Reynolds would have to put up with. Kittel denied receiving any advice about lateral sway bracing. He also testified that no one told him the crane might fall. There was uncontradicted expert evidence that the crane, without lateral sway bracing for the short rods, was in a defective condition to ultimate users when it was delivered to Reynolds.

### III

### Bohnert's Contention

Bohnert claims that it was not strictly liable under Section 402A of the Restatement of the Law of Torts 2d which provides that a seller is subject to liability only if the product is expected to and does reach the user or consumer without substantial change in the condition in which it is sold. Bohnert also calls our attention to the caveat to Section 402A which declares that the American Law Institute expresses no opinion concerning whether 402A applies to the seller of a product expected to be processed or otherwise substantially changed before it reaches the user or consumer, or to the seller of a component part of a product to be assembled.

Bohnert would have us conclude that the component parts it sold were substantially changed by assembly into a whole in a manner over which they had no control. Bohnert and Cleveland actually stand in the posture of distributor and manufacturer. Comment p. of Section 402A provides: "It seems reasonably clear that the mere fact that the product is to undergo processing, or other substantial change, will not in all cases relieve the seller of liability under the rule stated in this Section. . . . The question is essentially one of whether the responsibility for discovery and prevention of the dangerous defect is shifted to the intermediate party who is to make the changes." The factual situation here appears to us to make it evident that the responsibility could not have been shifted to take Bohnert and Cleveland out of the scope of the strict liability theory of Section 402A. The intermediate parties neither added to nor subtracted from the original product involved. The crane was installed and remained exactly as its manufacturer, designer and seller had envisioned.

As will be subsequently demonstrated, Bohnert was in no event entitled to a directed verdict. Bohnert's liability depends upon a jury's assessment of the adequacy of the warning Bohnert undertook to give after the defective character of the crane became known. We agree with the Court of Appeals that Bohnert was not entitled to a directed verdict and affirm the decision in this respect.

### IV

### The Warning Question

In *Ulrich v. Kasco Abrasives Co.*, Ky., 532 S.W.2d 197 (1976), we observed that under the strict liability theory of Section 402A of the Restatement of Torts 2d the issue is whether a product is unreasonably dangerous to a person who should be expected to use or be exposed to it. We stated that if the danger is unreasonable because it is not obvious and may not be apprehended by

such person, then it may be obviated by an adequate warning so provided that in the ordinary course of events it will reach and be understood by that person. In *Ulrich* we said that a manufacturer was entitled to rely on the owner of a machine to assume the responsibility for keeping it in safe working order. "The owner's failure to do so (and to warn the operator accordingly) might constitute superseding negligence if it could be found that the tool was unreasonably dangerous in the first place . . ." *Ulrich,* supra, at p. 201.

In this case it appears to us that this is another illustration of the overlap between negligence principles and so-called strict liability theory where defective design or inadequate instructions and warnings of the dangers attending the use of the product are present.[1] Kendall, the injured worker, did not sue his employer Reynolds. This is probably explained by the presence of workmen's compensation payments to him by his employer whom he cannot legally sue in a tort action. As observed in *Ulrich,* supra, when this case is "divorced from the glut of erudition erupting from the scholars," the evidence of the parties makes the real issue simple and renders other issues irrelevant.

In this case, after use for a comparatively short interval of time, this crane was discovered to be defectively operating by the manufacturer, the seller, and the buyer. The manufacturer and seller initiated the inquiry into the fitness of the machine and discovered that it lacked bracing which would render it safe. According to the manufacturer and seller, these facts were brought home to a responsible supervisory employee of the buyer. This employee of the buyer agreed to cause the bracing to be applied which under the evidence would have made the machine safe for the buyer's employee who operated the crane. The supervising employee of the buyer admits that he knew the crane was operating defectively because of the breaking of the short hanger rods. He denies that he

agreed to effect lateral sway bracing and also represents that he did not realize the extent of the danger nor of the probability of the crane falling if it were not properly braced.

■ The manufacturer and seller admit that they did not discuss the extent of the danger with the buyer's plant engineer because they claim the extent of the danger and the possibility of the crane falling was obvious, at least to a person occupying the role here played by the plant engineer. We are, therefore, of the opinion that this case presents a jury question as to the sufficiency of the warning under the circumstances, taking into account the question of the obviousness of the danger and the possible assumption of responsibility by the buyer.

In our view, this resolution makes Kendall's claim that he was entitled to a directed verdict against Cleveland and Bohnert untenable. Hence, we agree with the decision of the Court of Appeals on this phase of the case. Kendall's argument that the trial court committed error in instructing the jury that if the sole cause of the occurrence was the negligence of Reynolds it should find for Cleveland and Bohnert was rejected by the Court of Appeals. That court held Kendall did not preserve the alleged error for appellate consideration because the source of the instruction was traceable to an instruction tendered to the trial court by Kendall. Kendall asserts that the sole-cause instruction violated *House v. Kellerman,* Ky., 519 S.W.2d 380 (1974). The giving of such an instruction was disapproved in *Kellerman.*

Our resolution of this case so far as this issue is concerned will, in our view, present to the jury the only operative issue for determination. The problem will not arise on a retrial.

## V

### The Questions for the Jury

■ We substantially agree with the Court of Appeals that this case resolves

1. Cf. *Barker v. Lull Engineering Co., Inc.,* 20 Cal. 413, 143 Cal.Rptr. 275, 573 P.2d 443 (1978). Also see Duvall, "Products Liability," 6 Tex.Tech.L.Rev. 1177 (1975).

itself into the adequacy of the warning given by Cleveland and Bohnert to Reynolds, under the circumstances present, and the possible assumption of responsibility by Reynolds. We disagree, however, with the instructions recommended by the Court of Appeals. In substance, the instructions recommended by the Court of Appeals required the jury to first determine whether Cleveland and Bohnert should have foreseen that Reynolds would not see to the installation of bracing sufficient to prevent the breakage of the hanger rods. These instructions then seemed to require that in the event the jury believed Cleveland and Bohnert should have foreseen that Reynolds would fail to make the needed installation, then it was the duty of Cleveland and Bohnert either to give Reynolds adequate warning of the danger or in the absence of adequate warning "to apply such technology as the jury may believe from the evidence was then available to the defendants to so design the crane system as to prevent the breaking of the hanger rods."

Under the evidence in this case, we think the warning given to Kittel discharged the manufacturer's and seller's responsibility if it was adequate under the circumstances. The warning duty has been deemed satisfied where warning was given to supervising engineers or technicians though not to the one who was injured while simply following the directions of such skilled individuals. 72 C.J.S. Supp. Products Liability § 27, pp. 42, 43, 44. Cf. *Ulrich v. Kasco Abrasives Co.,* supra.

There was no evidence that Cleveland and Bohnert knew or had reason to know that Reynolds was careless or would fail to install the bracing, if it, in fact, agreed to install it. The requirement in the recommended instructions that in the absence of adequate warning Cleveland was to design the crane system to prevent the harm does not conform to the evidence.

Upon a retrial of this case, if the evidence be the same, or substantially similar, the jury should be instructed that it was the duty of the defendants, Cleveland and Bohnert, to communicate their warning to Kittel, the plant engineer of Reynolds, so as to afford to Kittel, as a plant engineer in charge of the maintenance of the crane, fair and adequate notice of the danger and possible consequences of using or even misusing of the equipment, except for those dangers and consequences which the jury believes were obvious to a reasonable plant engineer under the same or similar circumstances as those present in this case. If the jury believes from the evidence that Cleveland and Bohnert gave such fair and adequate warning to Reynolds, or that Kittel, the plant engineer, or Reynolds, agreed to assume the responsibility for the prompt installation of sway bracing the crane, then the law is for the defendants and they should so find; but, unless they so believe, the law is for the plaintiff and they should so find.

The decision of the Court of Appeals is affirmed in part and reversed in part and the cause is remanded to the circuit court for further proceedings consistent with this opinion.

All concur.