HERCULES POWDER COMPANY et al.,
Appellants,

v.

Jackson HICKS and Raymond Cox,
Appellees.

Jackson HICKS and Raymond Cox,
Cross-Appellants,

v.

HERCULES POWDER COMPANY et al.,
Cross-Appellees.

Court of Appeals of Kentucky.

Feb. 27, 1970.

Rehearing Denied June 5, 1970.

Ernest C. Pepples, Jr., Wyatt, Grafton & Sloss, Frank W. Burke, J. W. Hottell, Arthur W. Grafton and Edgar A. Zingman, Louisville, for appellant Hercules Powder Co.; Laurence H. Eldredge, Philadelphia, Pa., of counsel.

Joseph Davis, Louisville, for appellees.

DAVIS, Commissioner. .

Jackson Hicks and Raymond Cox, plaintiffs in the trial court, obtained verdicts and judgments of $120,000 and $200,000, respectively, for personal injuries they suffered when an explosion occurred in a ditch where they were working. The judgments were against appellants, Hercules Powder Company; Rose A. Herbert, Executrix of E. T. Herbert, and Explosives Supply, Inc., jointly and severally. The defendants at trial are the appellants who present various grounds for reversal. The plaintiffs, by cross-appeal, seek to preserve other claimed grounds for recovery if the judgments are reversed. A statement of the factual background is necessary before discussion of the legal issues presented.

Hicks and Cox were employees of Wabassco Construction Company, a corporate entity owned by Don Ridge. Wabassco was engaged in developing a subdivision near Jeffersontown. Installation of sewer lines there required use of explosives in displacing rock encountered in ditching. Ridge bought a large supply of dynamite from Explosives Supply, Inc., a corporate alter ego for E. T. Herbert, who died a few months before the trial and whose personal representative is an appellant. Hereinafter, unless the contrary is indicated, reference to "Herbert" shall include reference to Explosives Supply, Inc.

Herbert was the distributor in the Louisville area for Hercules, a manufacturer of dynamite and other explosive products. He had served in that capacity since 1958. From 1927 to 1937 Herbert had delivered dynamite for Hercules; from 1937 to 1958 he had supervised the magazine for Hercules in the Louisville area.

Ridge began to purchase dynamite from Herbert in the summer of 1965, and on August 5, 1965, Ridge and Herbert executed a written "service agreement" for their companies. The agreement obliged Herbert to render to Wabassco "advice, suggestions and recommendations" relating to the use or handling of explosives upon request of Wabassco. Herbert had furnished advice and assistance to Wabassco in this regard prior to January 13, 1966, the date of the accident in question. Neither Herbert nor Wabassco sought any advice or assistance from Hercules about the Wabass-

co project. Hercules had no knowledge that the project existed. None of its personnel had ever visited the site or met any of Wabassco's employees.

On the morning of January 13, 1966, some Wabassco employees, including Hicks, drilled holes preparatory to blasting with dynamite. Staples, then Wabassco's foreman, inserted the dynamite in the holes. Blasting caps were applied, wired in series, and tamped down. A check of the circuit by use of a galvanometer indicated nothing amiss. The ditch was backfilled, the circuit retested, a lead wire attached to the blasting machine, and the charge detonated. The foreman inspected the blasted area and observed no unsatisfactory condition. He then directed Cox to level the ditch with a highlift, which he proceeded to do. Shortly, Hicks entered the ditch with a jack-hammer. He and Staples noted a "high spot" (an area of rock and other material not adequately dislodged by the explosion). Staples directed Hicks to "knock off" the high spot. With a shovel, Cox came to assist Hicks in dealing with the high spot. Hicks "poked around with the screw driver" which Cox handed him but found nothing, whereupon he applied the jack-hammer to the high spot. An explosion occurred at once; Hicks and Cox were badly injured. Hicks, as well as all of Wabassco's supervisory personnel, knew that such a high spot might contain unexploded dynamite and that it presented a dangerous condition. Whether Cox had personal knowledge of the danger is not certain.

Herbert was not at the job site on January 13, 1966, nor had he been there for several days. He had no information about the particular project on which the accident occurred, nor had his advice or assistance been sought with respect to it. Herbert believed that the entire project had been shut down due to unfavorable weather conditions.

There was no specific showing whether the tragic explosion was of dynamite or a blasting cap. No contention is made that the dynamite was defective. However, appellees do argue that Herbert was remiss in furnishing short-period electric-delay blasting caps with leg wires only eight feet in length.

All defendants moved for a directed verdict, both at the close of plaintiffs' case and after all the evidence was in. The court denied those motions and submitted the case to the jury, with the result as already indicated.

The appellants, defendants in the trial court, seek reversal of the judgments against them. The basis of the claim against Hercules, as distinguished from the claim against Herbert, makes it appropriate to deal separately in the opinion with the phases of the case as respect Hercules and Herbert.

An understanding of the trial court's basis for permitting recovery against Hercules may best be had by referring to the pertinent portions of the court's Instruction No. 2:

"If the jury believe from the evidence that the person or persons employed by [Wabassco] to perform the blasting operations, * * * were incompetent and inexperienced to perform such work, and that the defendant, Herbert, before January 13, 1966, knew or by the exercise of ordinary care, should have known that they were incompetent and inexperienced for such work, and if you further believe from the evidence that the defendant, Herbert, was not competent and experienced to properly advise, instruct and supervise such persons in the performance of such blasting operations, and if you further believe from the evidence that the defendant, Hercules, * * * before January 13, 1966, knew, or by the exercise of ordinary care should have known that the defendant, Herbert, was not competent and experienced to properly advise, instruct and supervise such persons in the performance of such blasting operations, and if you further believe from the evidence that

the explosion and the resulting injuries * * * were the direct and proximate result of the incompetence and inexperience of those performing the blasting operations, and the incompetence and inexperience of Herbert to properly advise, instruct and supervise said persons in said blasting operations, then the law is for both plaintiffs, Hicks and Cox, on their claims against the defendant, Hercules, and you should so find."

It is not entirely clear from the record or the briefs what specific precedent prompted the court to give the just-quoted basis of Hercules' liability. During the trial, and in the briefs, much reference is made to Restatement of Torts 2d, Sections 388, 390, 411, and 427. We will summarize the sections of the Restatement just mentioned, quoting some of them verbatim:

■ Section 388, relating to furnishing a chattel known to be dangerous for its intended use, provides that one who supplies such a chattel directly or through a third person is subject to liability to those whom the supplier should expect to use the chattel, or be in danger by its probable use, for physical harm caused by the use of the chattel by a person for whose use it is supplied and in the manner for which it is supplied, if the supplier (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied; (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition; and (c) fails to exercise reasonable care to inform them of its dangerous condition. It seems clear to us that subsection (b) clearly places Hercules beyond the ambit of the liability expressed in the rule. Hercules certainly had reason to believe that any normally intelligent person would realize the dangerous characteristics of dynamite. It is not claimed by or for the appellee plaintiffs that they were unaware of the dangerous propensities of dynamite. Neither is there any contention that the dynamite furnished by Hercules was defective. In fact, the record clearly reveals that Hicks knew that unexploded dynamite might lurk in the high spot and appreciated the danger involved in attempting to reduce the high spot. Cox should have been warned of it by Wabassco's personnel.

■ Section 390 of Restatement of Torts 2d relates to supplying chattels for use by a person or persons known to be incompetent. Because of appellees' special reliance upon Section 390, we quote it in full:

"One who supplies directly or through a third person a chattel for the use of another whom the supplier *knows* or *has reason to know* to be likely because of his youth, inexperience, or otherwise, to use it in a manner involving unreasonable risk of physical harm to himself and others whom the supplier should expect to share in or be endangered by its use, is subject to liability for physical harm resulting to them." (Emphasis added.)

It is important to recall that the rule imposes liability upon the supplier of a chattel for use by an incompetent person if, and only if, the supplier *knows* or *has reason to know* of the probable misuse by reason of the incompetence of the person to whom the chattel is furnished. The record fails to reflect any basis upon which a finding could be made that Hercules *knew* or *had reason to know* of any incompetence of Herbert or Wabassco or any of its employees. Section 12 of Restatement of Torts 2d points out that the words "reason to know" as used in the Restatement of Torts denote the fact that the actor has information from which a person of reasonable intelligence would infer that the fact in question exists, or that such person would govern his conduct upon the assumption that such fact exists. Significantly, Section 12 provides that the words "should know" denote the fact that a person of reasonable prudence and intelligence would ascertain the fact in question in the performance of his duty to another, or would govern his conduct upon the assumption that such fact exists. As noted

in Comment a, Restatement of Torts, Section 12:

> "Both the expression 'reason to know' and 'should know' are used with respect to existent facts. These two phrases, however, differ in that 'reason to know' implies no duty of knowledge on the part of the actor whereas 'should know' implies that the actor owes another the duty of ascertaining the fact in question."

Thus, Section 390 could be a basis for liability against Hercules only if Hercules *knew* or *had reason to know* of the incompetence, if any, of Herbert or Wabassco. There is no proof that Hercules had such knowledge or any reason to know of the alleged incompetence.

■ Section 411, Restatement of Torts 2d, relates to negligence in selection of a contractor, and provides:

> "An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or (b) to perform any duty which the employer owes to third persons." Hercules designated Herbert as its distributor for dynamite and other related products in 1958. Hercules also used Herbert as the manager and supervisor for storage of explosives in the Louisville area. Prior to 1958 Herbert had been an employee of Hercules beginning in 1927 dealing in dynamite and, after training in 1937, serving as keeper of Hercules' magazine in the Louisville area. During all of those years, nothing had been made known to Hercules reflecting adversely on Herbert's competence. It is quite doubtful that Section 411 of the Restatement of Torts 2d has any applicability to the present case. So far as Herbert's sale of the dynamite to Wabassco is concerned, he was not a contractor engaged by Hercules to perform any work for Hercules. Herbert was a contractor engaged by Hercules to supervise storage of dynamite and sale of dynamite but not a contractor engaged by Hercules to *use* dynamite. The injuries suffered by Hicks and Cox did not result from any failure of Herbert respecting any function entrusted to Herbert by Hercules.

■ Section 427 of the Restatement of Torts 2d, in dealing with employers of contractors, provides:

> "One who employs an independent contractor to do work involving a special danger to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract, is subject to liability for physical harm caused to such others by the contractor's failure to take reasonable precautions against such danger."

Appellees contend that for purposes of this case Section 427 should be read:

> "One [Hercules] who hires an independent contractor [Herbert] to do work involving a special danger [the danger in making sales of dynamite to persons who are going to use it unsafely, and giving improper recommendations and advice] to others which the employer knows or has reason to know to be inherent in or normal to the work, or which he contemplates or has reason to contemplate when making the contract is subject to liability for physical harm to such others by the contractor's failure to take reasonable precautions against such danger."

The difficulty we have with this concept lies in the fact that Hercules did not hire Herbert to use dynamite or to render advice concerning its use. Certainly, Hercules did not engage Herbert to make sales of dynamite to persons for improper or reckless use.

■ As a preliminary procedural matter, the appellees strenuously argue that

any claimed error in the trial court's denial of the motions for directed verdict has not been preserved for appellate review, because the ground for the motions was not properly presented in the trial court. CR 50.01 provides in pertinent part: "A motion for a directed verdict shall state the specific grounds therefor." Failure to specify the ground or grounds for a directed verdict forecloses a party's right for appellate review of the court's denial of the motion for directed verdict. Gulf Oil Corporation v. Vance, Ky., 431 S.W.2d 864. As respects the motion of Hercules, the record reflects that at the close of the evidence offered for the plaintiffs Hercules moved for a directed verdict through counsel's statement: "The plaintiff having announced closed, the defendant, Hercules, moves the Court for a direction of verdict on the grounds that the plaintiff fails to establish a cause of action upon which relief can be granted." Immediately following that statement of counsel appears a parenthetic note by the reporter: "(Here both counsel agreed that the future arguments should not be reported by the reporter.)" Immediately prior to the statement of Hercules' counsel appears the report of an argument in chambers made in behalf of Herbert for directed verdict setting forth in some detail the basis for the motion of Herbert. Herbert's counsel said in part:

"The Court will recall that at a pretrial conference and since then during the trial of this action, the principal reliance which the plaintiffs have placed has been on two things—first some sort of negligence based on Section 390 of the Restatement of Torts. * * *

"Passing from there to the more general idea of liability under 390 of the Restatement, there is an attempt to impose liability upon a third party not directly involved in a claim for having placed in the hands of an incompetent person a dangerous instrumentality. We have gone into this at some length with the Court."

A reporter's note in the record states: "Here ensued a discussion of Estes v. Gibson [Ky.], 257 S.W.2d 604 [36 A.L.R.2d 729]." It is impossible to read the record and the comments of the trial judge and the lawyers for the parties without fully understanding that the fundamental issue of the liability vel non of Hercules was thoroughly and completely explored and argued. During a colloquy between the judge and counsel for Hercules, and after the judge had related his preliminary thinking on the question of liability of Hercules, counsel stated to the court: "I know of no authority for that proposition and I don't believe that that is the state of the evidence." The trial judge responded, "I know of no authority either, except that it is my idea that the language in the various sections of the Restatement, in dealing with this extra-hazardous product, I believe imposes the duty on the manufacturer to exercise extraordinary care to see that the ultimate user is experienced and is competent. I know of no authority and none has been cited by the plaintiffs and none by defendants."

After all of the evidence was introduced, counsel for all defendants moved for a directed verdict. The transcript of proceedings at that time merely related that the parties had so moved. The court, in dealing with the motions, said:

"I have no trouble, in all candor, in overruling the defendant, Herbert and Explosives Supply. I have a great deal of trouble and I overrule Hercules with a great deal of misgiving, and it may be up on a motion for Judgment N.O.V. in the event plaintiffs get a judgment against Hercules. If counsel then can find a single case clarifying or stating the duty of the manufacturer under circumstances reasonably similar to those in this case and he affords me the opportunity to read that case and learn from it, I may then be depending on what that type of case holds, and then determine either that I was correct in overruling

the motion of Hercules or I was in error in overruling the motion."

In our view there simply is no valid basis for appellees' argument that Hercules failed to make known to the trial court its ground for seeking a directed verdict. The same is true as respects Herbert, as fully appears from examination of the transcript of the proceedings. Gulf Oil Corporation v. Vance, Ky., 431 S.W.2d 864, does not stand for the proposition that a litigant must reiterate in his motion for directed verdict the arguments and grounds he had already urged upon the court at pain of running afoul of CR 50.01. As noted in Gulf Oil Corporation:

"The purpose of the rule is to apprise fairly the trial judge as to the movant's position and also to afford opposing counsel an opportunity to argue each ground before the judge makes his ruling. The attention of the trial judge can thus be focused on possible reversible errors which might otherwise be obscure with only a general motion for a directed verdict." Id., 431 S.W.2d 865.

It is plain to us that the purpose of the rule as so stated was completely met in the present case. Cf. Lewis v. Nelson, (CA8) 277 F.2d 207 (1960).

■ We have already indicated our conclusions that no basis for liability against Hercules is to be found in the principles enunciated in the various sections of Restatement of Torts 2d to which we have referred and upon which the appellees have relied. On the basic argument that the principles claimed in the Restatement of Torts 2d furnished ground for fastening liability on Hercules, the appellees lay heavy stress upon Eck v. E. I. Du Pont De Nemours & Company, 393 F.2d 197 (CA7) (1968), and Post v. American Cleaning Equipment Corporation, Ky., 437 S.W.2d 516. An examination of those decisions reveals that each of them was rested upon a duty to warn of a danger known to the supplier but unknown to the person whom

the supplier reasonably could anticipate would be affected by the use and unknown danger. The danger was personally known to Hicks. Cox's foreman also knew the danger, and the defendants had no reason to know that he would not warn Cox. Hicks and Cox needed no additional warning of it. Hence, the rationale of Eck and Post affords no basis for imposing upon Hercules a duty to warn in the present case. We conclude that the trial court erred in failing to direct a verdict in behalf of Hercules and again in denying Hercules' motion for judgment n. o. v.

■ We think the same reasoning applies as to Herbert's liability. Even if it could be found that Herbert knew or had reason to know of dangerous incompetence of Wabassco's employees with respect to proper safety practices in handling explosives, the fact remains that certainly Hicks appreciated the particular danger in attacking the high spot in the circumstances. Wabassco's foreman knew the danger and reasonably should have advised Cox of it. Other unrelated acts of carelessness by Wabassco's men, such as smoking near the stored dynamite, or improper storage of it, had no causative relation to the incident which caused plaintiffs' injuries. We are unable to discern any duty which Herbert owed Hicks or Cox respecting the particular event which resulted in their injuries.

Hicks specifically testified that he realized that unexploded dynamite might be in the "high spot." Cox, who had had less experience on the job than Hicks, and who was unable to recall any of the events of the accident, did not so testify. However, it was shown that other incidents of extricating unexploded dynamite from such "high spots" had occurred during the work's progress. The responsible and supervisory employees of Wabassco knew of the problem and the danger. We do not perceive that Herbert's duty to warn, as urged by appellees, could extend to a requirement that he see to it that each and every employee of Wabassco should have individual warning and instruction. If Eck

v. E. I. Du Pont De Nemours & Company, 393 F.2d 197 (CA7), may be read as supporting a contrary view, we are unwilling to follow it. To impose such an all-encompassing duty on the supplier of a chattel would transcend the bounds of reason and practicality.

We need not consider in detail the numerous contentions advanced by appellees on cross-appeal as alternate grounds for recovery. The contributory fault of Hicks would foreclose his recovery under any theory advanced. If it be assumed that Cox had no personal knowledge of the danger in probing the high spot, the failure of Wabassco's foreman and other supervisory employees to apprise Cox of that fact (which they did know) was such an intervening and unforeseeable act as to insulate Herbert as well as Hercules from liability to Cox.

The judgments are reversed on the original appeals with directions to enter judgments n. o. v. dismissing the complaints of Hicks and Cox against Hercules and Herbert. The judgments are affirmed on cross-appeal.

All concur.