779 F.2d 51
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
DENNIS LEE MEREDITH, DONNA GAIL MEREDITH, STEVE RUCKER,
ADMINISTRATOR OF THE ESTATE OF JAMES C. PUCKER,
DECEASED, Plaintiffs-Appellants,
v.
UNITED STATES OF AMERICA, Defendant-Appellee.
 84-5918
 United States Court of Appeals, Sixth Circuit.
 10/16/85
 
 AFFIRMED
 W.D.Ky.
 ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF KENTUCKY
 BEFORE: LIVELY, Chief Judge; WELLFORD, Circuit Judge; and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiffs-appellants, Dennis Lee Meredith, Donna Gail Meredith, and Steve Rucker, administrator of the estate of James C. Rucker, deceased (collectively and individually referred to as 'Meredith') appeal from a decision of the district court dismissing their complaint, against defendant-appellee United States of America, with prejudice. On appeal, Meredith argues that the district court erred in finding that the United States Army Corps of Engineers ('Corps') did not violate its own design criteria and industry standards, construing and applying Kentucky law concerning the Corps' duty to warn, and admitting into evidence and relying upon the testimony of the Corps' expert witnesses. After carefully reviewing each of Meredith's contentions, we affirm.
 
 
 2
 The Corps contracted with Struck Construction Co. ('Struck') for the erection of a Maintenance Instruction Facility ('MIF') at Fort Knox, Kentucky. The contract between Struck and the Corps incorporated by reference the Corps' General Safety Requirements Manual, which incorporated the Standards and Specifications of the American Institute of Steel Construction (AISC). Struck subcontracted with International Steel Co. ('International') for the fabrication and erection of the structural steel for the building. International, in turn, subcontracted with Ambrosius Erecting Corp. ('Ambrosius') for the erection of the structural steel.
 
 
 3
 Ambrosius then began to erect a row of eight steel columns which were to form the south wall of the building. Each column was welded to a 1/2' think steel base plate and fastened to a concrete footing by two 1' anchor bolts. Contrary to the contract and the technical manuals, which required the supporting of steel structures during erection, Ambrosius followed the custom in Kentucky and relied solely on the base plates and anchor bolts to support the columns. The steel structural wall subsequently collapsed, resulting in the death of James C. Rucker and physical injury to Dennis Lee Meredith, both employees of Ambrosius.
 
 
 4
 The appellants brought the present action against the United States, pursuant to the Federal Tort Claims Act, 28 U.S.C. Sec. 1346(b) (1982), for the wrongful death of James C. Rucker, the injuries to Dennis Lee Meredith, and Donna Gail Meredith's loss of consortium. After a ten-day bench trial, the district court concluded that the Corps was not negligent in designing the base plates and anchor bolts and had not breached any duty to warn, and, accordingly, dismissed Meredith's complaint with prejudice. From that decision, Meredith appeals.
 
 
 5
 Before examining the merits of this appeal, we note that in reviewing a district court's decision, sitting without a jury, this Court shall not set aside findings of fact unless 'clearly erroneous,' Fed. R. Civ. P. 52(a), giving adequate deference to the district court's determinations regarding the credibility of witnesses. Anderson v. City of Bessemer City, North Carolina, 105 S. Ct. 1504, 1512 (1985). Nevertheless, this Court may reverse a trier of fact if, on a review of the entire evidence, we are 'left with the definite and firm conviction that a mistake has been committed.' United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). With these principles in mind, we turn to the merits of Meredith's assertions.
 
 
 6
 Meredith's first argument on appeal is that the district court erred in finding that the Corps did not violate its own design criteria and AISC standards. He asserts that the Corps negligently designed the base plates and anchor bolts of the structural steel columns which collapsed by not designing the plates and bolts to withstand the stresses that would be incurred during erection of the building. Specifically, Meredith claims that the Corps violated its own design criteria by failing to take construction loads into account when designing the base plates and anchor bolts, inadequately designing for wind load force, and failing to conduct a design analysis. We consider each contention in turn.
 
 
 7
 Meredith claims that a plain reading of Section 4g of TM 5-809-1 of the Corps' Safety Manual[1] demonstrates that the Corps had the burden of designing the base plates and anchor bolts to withstand all loads which would be placed upon the steel structure during the erection process. We do not accept such an interpretation. Initially, there is a question of what is meant by 'construction loads' within the context of a technical manual for building design. Government witnesses testified that 'construction loads' do not include all the loads that are in Fact placed upon a structural member during erection, but only those loads known to the designer that will necessarily be placed on the structure as a consequence of construction. The district court agreed with the Government's experts that 'in the industry, erection loads are not considered to be construction loads.' Further, the language of TM 5-809-1 does not unambiguously place on the designer the burden of accounting for all loads which a steel structure may encounter during erection. On the contrary, the Corps' Safety Manual and AISC standards clearly place the responsibility of providing temporary support and bracing on the erector.[2] Thus, the Government's witnesses indicated that the Corps had properly designed the base plates and anchor bolts in accordance with Section 4g under the assumption that guying or other lateral support would be employed by Ambrosius. Based upon the foregoing, the district court concluded that the national standard in the steel construction industry was for the erector to determine the need for guying and for the designer of base plates and anchor bolts not to design for erection stresses. This finding is amply supported by the record. Consequently, we reject Meredith's contention that the Corps violated Section 4g.
 
 
 8
 In a similar vein, Meredith alleges that the Corps did not adequately design the plates and bolts to withstand a wind load force of ninety miles per hour as called for in the Corps' Safety Manual. This contention, however, also assumes that the Corps had the responsibility of designing the plates and bolts to withstand all the stresses that would arise during the erection process. As previously noted, the burden of providing for temporary support during erection was on the erector, Ambrosius. Accordingly, we reject Meredith's claim in this regard.
 
 
 9
 Finally, Meredith contends that the Corps violated acceptable standards of engineering practice by failing to perform a design analysis on the plates and bolts prior to their integration into the steel columns. He asserts that this was tantamount to merely guessing at the dimensions necessary for the plates and bolts. The Government states that the AISC formula used to determine the size of these steel components takes the relevant loads into account, a proposition uncontroverted by Meredith. Application of the AISC formula called for a base plate 1/4' in thickness. The base plates actually employed in the MIF column were 1/2' thick. Not surprisingly, therefore, the district court concluded that the plates and bolts on the MIF column met or exceeded the AISC standard. Based on these facts, we cannot say that the Corps violated industry standards by failing to conduct a design analysis.
 
 
 10
 Meredith's second argument on appeal is that the district court erred in construing and applying Kentucky law with regard to the Corps' duty to warn.[3] He contends that the Corps was under a duty to warn Ambrosius that the design of the plates and bolts presumed the use of lateral support and that erection of the structural steel columns would be unsafe without such support. In making this argument, Meredith relies upon Montgomery Elevator Co. v. McCullough, 676 S.W.2d 776 (Ky. 1984), Post v. American Cleaning Equipment Corp., 437 S.W.2d 516 (Ky. 1968), and Section 388 of the Restatement (Second) of Torts.
 
 
 11
 Meredith's reliance on Montgomery Elevator and Post is misplaced. Both cases, decided after Kentucky shifted from a negligence to a strict liability standard for products liability cases in Dealers Transport Co. v. Battery Distributing Co., 402 S.W.2d 441 (Ky. 1965), applied a duty to warn applicable to analyses under Section 402A of Restatement (Second) of Torts. Since strict liability cannot be imposed on the United States under the Federal Tort Claims Act, Laird v. Nelms, 406 U.S. 797, 798-99, 803 (1972), the application of a strict liability duty to warn is inapposite.
 
 
 12
 A supplier may, however, also incur liability under a duty to warn based on negligence principles. Restatement (Second) of Torts Sec. 388 (1965)[4]; Hercules Powder Co. v. Hicks, 453 S.W.2d 583, 587 (Ky. 1970). Under this duty, a manufacturer must warn of a danger of which he either knows or has reason to know and which he has no reason to believe will be realized by the anticipated user. See Restatement (Second) of Torts Sec. 388 (1965). Meredith alleges that the Corps was negligent because while designing the base plates and anchor bolts, the Corps knew of the custom in Kentucky to erect structural steel columns without lateral support and because the Corps was put on notice of this practice by virtue of the presence at the construction site of Henry Pike, the Corps' quality assurance representative, and inquiries made of him.[5]
 
 
 13
 As to Meredith's claim that the Corps' designer knew of the local Kentucky erection custom, the district court found that the national industry standard was for the erector to determine the need for and furnish guying. The court further determined, as a matter of fact, that Kentucky's local custom to rely solely on base plates and anchor bolts for support was not known to the Corps' designer. Consequently, the district court concluded that the Corps did not know of Ambrosius' intention to erect the steel columns without lateral support. The district court's factual findings in this regard are not clearly erroneous, and hence, we reject Meredith's claim that the Corps knew of the local Kentucky custom.
 
 
 14
 Alternatively, Meredith contends that the Corps was put on notice by inquiries made by Ambrosious' construction personnel to Henry Pike. Some questions concerning the appropriateness of the plates or bolts were directed to Pike, to which he responded by pointing out that the plates and bolts met plan specifications. The lower court determined, however, that the inquiries were too general and too casual to put the Corps on notice of Ambrosius' plan to erect without lateral support. The district court also noted that Pike had only a high school education and characterized him as an 'untrained person' with 'no engineering background.' This Court has held that where an owner's liasion representative on a construction job was not an engineer, did not know the significance of plan deviations, and therefore did not report such deviation to the owner, knowledge of the deviation would not be imputed to the owner. J.A. Jones Construction Co. v. Englert Engineering Co., 438 F.2d 3, 6 (6th Cir. 1971). Likewise, in the present action, the observations made by Pike at the site, and communications of which he did not know the significance, will not impute knowledge to the Corps' designers in Baltimore that Ambrosius either intended to or was actually erecting and columns without lateral support. In light of this, and giving the district court's findings of fact their proper deference, we cannot find that the inquiries to, or observations of, Pike were sufficient to warrant imposing a duty to warn on the Corps.
 
 
 15
 Meredith's last argument on appeal is that the district court erred in admitting into evidence and relying on part of the Corps' expert witness testimony. The Government did not inform Meredith of the identity of its expert witnesses until one month before trial, presumably because it did not retain the experts to testify until after its motion for summary judgment was denied two months before trial. After denying Meredith's motion to prohibit the Corps' experts from testifying, the district court limited the Government to use of three of its seven listed witnesses, on the condition that they be produced for deposition before trial. The three experts selected by the Government were deposed by Meredith shortly before trial. The Government, in its Amended Answer to Interrogatories, stated that the experts would testify in accordance with the deposition testimony.
 
 
 16
 Meredith contends that the trial testimony of the experts went beyond that which was contained in their depositions, thereby prejudicing him by inhibiting effective cross-examination.[6] There is evidence, however, that the district court limited the scope of the experts' testimony to that which was contained in their depositions. For example, Meredith makes much of the fact that after the depositions were taken, the experts considered additional information and performed additional computations which were not disclosed to him until trial. Yet, at least on one occasion, with regard to calculations performed by Mr. Murray, the district court did exclude test results that arose subsequent to the despositions. Meredith also takes issue with the testimony of Mr. Murray to the effect that the steel wall collapsed because a crane pulled it over, a new theory presented for the first time at trial and which was at odds with all other trial and deposition testimony. A related point of contention is that the district court did not rule on Appellants' Motion to Strike this testimony before the end of the trial. Yet the district court specifically disclaimed reliance on this new theory in its Findings of Fact and Conclusions of Law, stating: 'In light of the Court's disposition of the case without considering avowal testimony, it is unnecessary to consider motions relating to that testimony.'
 
 
 17
 Furthermore, even if some testimony which exceeded the scope of deposition testimony was admitted into evidence and considered by the trial court, we believe that any prejudice which resulted was invited by Meredith himself. Meredith admitted, in his briefs and at oral argument, that the trial court had offered him a continuance. Meredith simply did not avail himself of the opportunity to remedy any prejudicial effects of testimony which he found objectionable. Thus, we find that the district court did not abuse its discretion in admitting and considering the testimony of the Corps' expert witnesses.
 
 
 18
 For the foregoing reasons, the judgment of the district court is affirmed.[7]
 
 
 
 [1]
 Section 4g of TM 5-809-1 provides:
 g. Construction loads, which are the loadings that may occur during the construction phase, will be considered. If applicable, special construction loadings will be included in the design. Instructions for removal of forms to prevent unacceptable unbalanced or excessive loading of any portion of the structure not provided for in the design will be incorporated in the specifications.
 
 
 [2]
 Section 7.9.1 of the AISC Code of Standarded Practice states:
 Temporary supports, such as temporary guys, braces, falsework, cribbing or other elements required for the erection operation will be determined and furnished and installed by the erector. These temporary supports will secure the steel framing, or any partly assembled steel framing, against loads comparable in intensity to those for which the structure was designed, resulting from wind, seismic forces and erection operations, but not the loads resulting from the performance of work by or the acts of others, nor such unpredictable loads as those due to tornado, explosion or collision. (emphasis added).
 Section 1.25.1 of the AISC Specifications states:
 The frame of steel skeleton buildings shall be carried up true and plumb, within the limits defined in the Code of Standard Practice, latest edition, of the American Institute of Steel Construction. Temporary bracing shall be provided, in accordance with the requirements of the Code of Standard Practice, wherever necessary to take care of all loads to which the structure may be subjected, including equipment and the operation of same. Such bracing shall be left in place as long as may be required for safety.
 Wherever piles of material, erection equipment, or other loads are supported during erection, proper provision shall be made to take care of stresses resulting from such loads.
 
 
 [3]
 It is uncontroverted on appeal that, as decided by the district court, the substantive law of Kentucky applies in this case
 
 
 [4]
 Section 388 of the Restatement (Second) of Torts provides:
 One who supplies directly or through a third person a chattel for another to use is subject to liability to those whom the supplier should expect to use the chattel with the consent of the other or to be endangered by its probable use, for physical harm caused by the use of the chattel in the manner for which and by a person for whose use it is supplied, if the supplier
 (a) knows or has reason to know that the chattel is or is likely to be dangerous for the use for which it is supplied, and
 (b) has no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition, and
 (c) fails to exercise reasonable care to inform them of its dangerous condition or of the facts which make it likely to be dangerous.
 
 
 [5]
 Meredith did not take issue with the fact that the Corps' presence at the construction site, by virtue of Pike's representation of the Corps for inspection purposes, did not give rise to a duty to warn on the part of the Corps, Raymer v. United States, 660 F.2d 1136, 1143 (6th Cir. 1981), cert. denied, 456 U.S. 944 (1982), but only claims that Pike's observations and communications made to him put the Corps on notice of the danger that existed because lateral support was not being used in erecting the columns
 
 
 [6]
 Meredith also argued initially that the experts should have been prohibited from testifying because the Government violated Rule 26(e) of the Federal Rules of Civil Procedure by failing to seasonably supplement its Answers to Interrogatories with the identities of the expert witnesses. He effectively dropped this line of argument when he stated in the Reply Brief for Appellants: 'Appellants do not object to the trial court's allowing the Corp [sic] at the eleventh hour to use experts.'
 
 
 [7]
 We deny the Government's motion to strike the Reply Brief for Appellants. Even if we had granted the motion and struck the reply brief, or alternatively, had considered the Supplemental Brief for Appellee, however, it would not have changed the outcome of this case