RENDERED: MAY 27, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-1583-MR

JHAH RIZEN                                                        APPELLANT

v.
APPEAL FROM MCCRACKEN CIRCUIT COURT
HONORABLE TIMOTHY KALTENBACH, JUDGE
ACTION NO. 19-CR-00321

COMMONWEALTH OF KENTUCKY                                          APPELLEE

OPINION
AFFIRMING IN PART AND REVERSING AND REMANDING IN PART

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; ACREE AND TAYLOR, JUDGES.

CLAYTON, CHIEF JUDGE: Jhah Rizen ("Rizen") appeals from the McCracken

Circuit Court's final judgment sentencing him to ten (10) years' imprisonment for

one count of fourth-degree assault, one count of tampering with physical evidence,

and one count of being a second-degree persistent felony offender ("PFO"). Rizen

argues that he was entitled to a directed verdict regarding the tampering with

physical evidence charge. Rizen further contends that the trial court committed error by permitting the jury to hear prejudicial and irrelevant testimony concerning his other bad acts. Finally, Rizen argues that the trial court denied him the right to present a defense.

Because we believe that the trial court erred by failing to grant Rizen's motion for a directed verdict on the charge of tampering with physical evidence, we reverse the trial court's judgment and remand with directions for the trial court to enter a directed verdict of acquittal on the charges of tampering with physical evidence and being a second-degree PFO. However, we affirm the remainder of the trial court's judgment and sentence regarding the charge of fourth-degree assault. Finally, because we are reversing and remanding Rizen's tampering with physical evidence and second-degree PFO convictions and affirming Rizen's fourth-degree assault conviction, we do not reach Rizen's other arguments.

## FACTUAL AND PROCEDURAL BACKGROUND

On May 10, 2019, the McCracken County grand jury indicted Rizen on one count of the following offenses: second-degree assault, second-degree unlawful imprisonment, tampering with physical evidence, third-degree terroristic threatening, and being a second-degree PFO. His three-day trial began on

September 23, 2020. Below is a summary of the evidence introduced at that proceeding.

In early 2019, Ashley Hiester ("Hiester") had recently moved out of her apartment because she did not have enough money to pay her rent. As a result of these circumstances, Rizen offered to allow Hiester to live with him and his girlfriend, Neva Smith. Around mid-February of 2019, Hiester moved in with Rizen and Smith.

Hiester testified that, on March 19, 2019, Rizen was upset with her because she had taken a gun and scales that had belonged to him. The next afternoon, on March 20, 2019, after again discussing the missing items with Hiester, Hiester testified that Rizen "just snapped." Hiester testified that Rizen smashed Hiester's phone with a hammer and then bent the cell phone with his hands. Hiester testified that she did not know why Rizen had broken her phone but "[h]e was irritated that I had been on it pretty much all day. I was on and off of it, wasn't really doing nothing around the house, just kind of sitting there." Hiester testified that Rizen then threw the phone, and it slid across the floor into his bedroom.

Hiester testified that approximately thirty to forty-five minutes later, Rizen pushed Hiester onto the couch and struck her several times with his fist. She further testified that he put her in a headlock and threw her down. Subsequently,

Rizen retrieved a kitchen knife, held it to her throat, and threatened to "physically hurt [her] bad" if she did not give him "the answers he was wanting." Around that time, he also threatened to kill her. Moreover, Hiester testified that he informed her that if she "didn't tell him the truth . . . he was going to take [her] life," and instructed her to "give him one reason why he shouldn't."

Hiester further testified Rizen struck Hiester with his fists "several" times during the assault. The blows knocked out a few of her teeth. Hiester additionally testified that Rizen attempted to hit her with a hammer at one point but missed. After the assault, Rizen informed Hiester that she "was his bitch and nobody else could have [her]." He also said he would hurt her if she tried to leave the apartment.

Sometime thereafter, Hiester asked Rizen if he had an extra phone into which she could put her SIM card since he had destroyed her other phone. He gave her a couple to try, but Hiester testified that the phones could not read her SIM card. However, she was finally able to find a phone in Rizen's apartment whereby she could text with friends and family and make phone calls. Hiester testified that she stayed in Rizen's apartment texting people for the next seven to eight hours after the alleged assault.

At approximately 2:00 a.m. – when she believed that Rizen was asleep – Hiester testified that she left the apartment and ran approximately two

blocks to a Five Star Food Mart. When she arrived, she hid in the bathroom. She also called her fiancé and an ambulance using Five Star's phone. Hiester went to the hospital, and staff documented that she had bruises and abrasions on her face and neck and missing teeth.

On March 21, 2019, Detective Blake Quinn was investigating Hiester's allegations. At 8:20 a.m., he arrived at Rizen's apartment to conduct surveillance. Detective Quinn testified on direct examination that almost immediately afterward, he saw Rizen "appear[] to be throwing something away" in the apartment complex's dumpster. However, on cross-examination, the following exchange occurred:

> Defense Attorney: Did you say you saw [Rizen]
> approach the dumpster, or you saw him throw something
> in?
>
> Quinn: I saw him at the dumpster.
>
> Defense Attorney: Oh, okay, so you didn't actually see
> something in his hand, and him toss it in?
>
> Quinn: No.

After Rizen left, law enforcement followed him until he stopped at a Budget Inn. Officers thereafter took him into custody. Detective Quinn subsequently returned to aid in the search of the dumpster. As a result of this endeavor, they recovered Hiester's cell phone.

Following Rizen's trial, the jury convicted him of fourth-degree assault, tampering with physical evidence, and being a second-degree PFO. The jury, however, acquitted him of the remaining charges.

At the conclusion of the penalty phase, the jury recommended a $500.00 fine and twelve (12) months' imprisonment on the assault charge; it further recommended a five (5) year sentence for the tampering charge, enhanced to ten (10) years as a result of Rizen's status as a PFO. The trial court subsequently sentenced Rizen in accordance with the jury's recommendation – apart from the fine, which the court waived. This appeal followed.

## ANALYSIS

### a. Directed Verdict – Tampering With Physical Evidence

Rizen first argues on appeal that the trial court erred when it failed to grant his directed verdict motion on the tampering with physical evidence charge. As a preliminary matter, the Commonwealth contends that Rizen did not properly preserve this issue. The Commonwealth argues that, contrary to Kentucky Rules of Civil Procedure ("CR") 50.01's requirement that a directed verdict motion "state the specific grounds therefor[,]" Rizen gave only a general statement which was insufficient for preservation purposes. We disagree.

The Commonwealth cites *Pate v. Commonwealth*, 134 S.W.3d 593, 597 (Ky. 2004), in which counsel twice stated that he wished to make a motion for

a directed verdict without providing any grounds or argument in support thereof. The Kentucky Supreme Court found the foregoing to be insufficient for the purpose of preserving the denial of the defendant's motion for appeal. *Id.* at 597-98.

However, Kentucky courts have also stated that "[t]he purpose of [CR 50.01] is to apprise fairly the trial judge as to the movant's position *and also to afford opposing counsel an opportunity to argue each ground before the judge makes his ruling.*" *Gulf Oil Corp. v. Vance*, 431 S.W.2d 864, 865 (Ky. 1968) (emphasis added) (citation omitted); *see also Hercules Powder Co. v. Hicks*, 453 S.W.2d 583, 590 (Ky. 1970).

In this case, after defense counsel stated that Rizen based his motion on the insufficiency of the evidence, the Commonwealth responded to the directed verdict motion with specificity, stating:

> As to the tampering . . . I believe we presented sufficient evidence that Mr. Rizen concealed the cell phone to attempt to prevent law enforcement from discovering it when he took the phone and put it in the dumpster. I think that the interview where he said he located the phone on the floor by the door is evidence that he was aware of it, there was evidence that he was by the dumpster where the phone was found by the police and I think that a reasonable jury could infer from the circumstances that Ms. Hiester had left the apartment, that Mr. Rizen was in the process of cleaning up and disposing of evidence.

We feel that the foregoing exchange was sufficient to "apprise fairly the trial judge as to the movant's position and also to afford opposing counsel an opportunity to argue each ground before the judge makes his ruling." *Vance*, 431 S.W.2d at 865. Thus, we believe that "the purpose of the rule as so stated was completely met in the present case." *Hicks*, 453 S.W.2d at 590. Accordingly, we proceed to the substantive legal issue at hand.

As discussed by the Kentucky Supreme Court, "[o]n appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal." *Commonwealth v. Benham*, 816 S.W.2d 186, 187 (Ky. 1991) (citing *Commonwealth v. Sawhill*, 660 S.W.2d 3 (Ky. 1983)). When ruling on a directed verdict motion, the trial court must assume the evidence for the Commonwealth is true and draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. *Id*. However, "[i]t should be remembered that the trial court is certainly authorized to direct a verdict for the defendant if the prosecution produces no more than a mere scintilla of evidence. Obviously, there must be evidence of substance." *See Sawhill*, 660 S.W.2d at 5.

A directed verdict motion is reviewed in light of the proof at trial and the statutory elements of the alleged offense. *Lawton v. Commonwealth*, 354 S.W.3d 565, 575 (Ky. 2011). We review the trial court's decision on a motion for

-8-

a directed verdict for an abuse of discretion. *Exantus v. Commonwealth*, 612 S.W.3d 871, 887 (Ky. 2020).

Kentucky Revised Statute ("KRS") 524.100(1)(a) states, in pertinent part:

> (1) A person is guilty of tampering with physical evidence when, believing that an official proceeding is pending or may be instituted, he: (a) Destroys, mutilates, conceals, removes or alters physical evidence which he believes is about to be produced or used in the official proceeding with intent to impair its verity or availability in the official proceeding[.]

Section (2) of KRS 524.100 states that tampering with physical evidence is a Class D felony.

The Commonwealth must therefore establish that the defendant (1) believed that an official proceeding was pending or may be instituted, (2) performed the act of "tampering with" the evidence at issue, and (3) acted with the intent to prevent the use of the evidence at an official proceeding. *Id*.

As the Kentucky Supreme Court further explained in *Commonwealth v. James*, "KRS 524.100 requires the Commonwealth to prove both that the defendant acted with the requisite criminal intent *and* that he completed the requisite criminal act." 586 S.W.3d 717, 724 (Ky. 2019) (emphasis in original). As required by the statute, "the Commonwealth satisfies the intent element by showing beyond a reasonable doubt that the defendant acted with *intent to impair*

-9-

[*the evidence's*] verity or *availability in* [*an*] *official proceeding*." *Id*. (emphasis in original) (internal quotation marks and citation omitted). Separately, "the Commonwealth satisfies the criminal-act element by showing beyond a reasonable doubt that the defendant completed one of the following proscribed acts: destroy[ing], mutilat[ing], conceal[ing], remov[ing] or alter[ing] physical evidence." *Id*. at 725 (internal quotation marks and citation omitted).

As discussed in *Little v. Commonwealth*, 272 S.W.3d 180, 186 (Ky. 2008), intent "may be inferred from the actions of a defendant or from the circumstances surrounding those actions. Likewise, intent may be inferred from the defendant's knowledge. Finally, we are mindful that a person is presumed to intend the logical and probable consequences of his conduct." (Internal quotation marks and citations omitted.)

In this case, even if Rizen did put the phone in the dumpster, the Commonwealth provided no proof that he either believed that an official proceeding was pending or may be instituted or that he intended to impair the item's availability in such a proceeding. As to any inferences to be drawn from his actions pursuant to *Little*, Rizen was in the apartment complex's parking lot and using the apartment complex's dumpster at 8:00 a.m., which was not an abnormally late or early time. No evidence exists in the record to indicate that Rizen was acting furtively or attempting to hide his actions from any onlookers.

Nor did the Commonwealth produce any evidence that the cell phone was placed within a garbage bag or other container or bag of trash in an effort to otherwise conceal it and keep it from being used against Rizen in any official proceeding.

As to any inferences to be drawn from Rizen's apparent knowledge of the circumstances at that time, the record indicates that he had attempted to find multiple replacement cell phones for Hiester. Such behavior evidences an apparent lack of concern that Hiester would contact the police and a lack of knowledge that his conduct was such that it would result in a possible official proceeding if she were to receive another means of communication. Indeed, Hiester testified that she had remained in Rizen's apartment for seven or eight hours after the assault texting and calling friends and family on a phone that belonged to Rizen, and that he was aware of such fact. Additionally, the record does not reflect that Hiester had given Rizen or Smith any indication that she would be contacting the authorities. Rizen's only testimony was that he had seen the broken phone on the floor in front of the door.

Accordingly, we find that Rizen was entitled to a directed verdict on the tampering with physical evidence charge as a matter of law; thus, the trial court abused its discretion when it denied such motion. We, therefore, reverse the trial court's judgment and remand with directions for the trial court to enter a new

judgment granting Rizen's motion for a directed verdict on the charge of tampering with physical evidence.

Moreover, because the failure of the underlying felony conviction renders Rizen's conviction for being a second-degree PFO improper, we reverse the trial court's judgment and remand with directions for the trial court to enter a new judgment granting a directed verdict on the charge of being a second-degree PFO. *See* KRS 532.080(2).

### b. <u>Other Arguments</u>

Rizen makes other arguments on appeal regarding alleged prejudicial and irrelevant testimony concerning other bad acts. However, because we are reversing and remanding the trial court's judgment regarding Rizen's convictions for tampering with physical evidence and being a PFO in the second degree, and because Rizen made no arguments concerning his conviction for fourth-degree assault, we need not address Rizen's arguments regarding the admissibility of Kentucky Rules of Evidence 401, 402, or 404(b) evidence. *See Sexton v. Commonwealth*, 317 S.W.3d 62, 64 (Ky. 2010).

### <u>CONCLUSION</u>

For the foregoing reasons, we reverse the trial court's judgment and remand with directions for the trial court to enter a directed verdict of acquittal on the charges of tampering with physical evidence and being a second-degree PFO.

However, we affirm the remainder of the trial court's judgment and sentence regarding the charge of fourth-degree assault.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Christopher Henry
Assistant Attorney General
Frankfort, Kentucky